**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

**GRAPHON CORPORATION**

Plaintiff,

v.

**GOOGLE INC.**

Defendant.

**Civil Action No. 2:08-cv-317-TJW**

**JURY TRIAL DEMANDED**

**GOOGLE INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Google, Inc. ("Google") submits this Answer, these Affirmative Defenses, and these Counterclaims in response to the Complaint for patent infringement filed by GraphOn Corporation ("GraphOn"). To the extent not specifically admitted herein, the allegations of GraphOn's complaint are denied.

**I.      ANSWER TO COMPLAINT**

**PARTIES**

1.      Answering paragraph 1, Google is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis denies each and every such allegation.

2.      Answering paragraph 2, Google admits that Google is a corporation duly organized and existing under the laws of the State of Delaware, having a place of business at 1600 Amphitheatre Parkway, Mountain View, CA  94043.

## JURISDICTION

3.     Answering paragraph 3, Google admits that the Complaint purports to be an action arising under the patent laws of the United States, including 35 U.S.C. §§ 101, *et seq.* and 271, *et seq.* Google admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 inasmuch as the Complaint purports to state claims for patent infringement arising under the patent laws of the United States. Google admits that it has conducted business in this district, and that it has a website accessible in this district, but denies any wrongdoing or infringement in this district or elsewhere. Google denies each and every remaining allegation of paragraph 3.

## VENUE

4.     Answering paragraph 4, Google admits that GraphOn purports to base venue under 28 U.S.C. §§ 1391(b) and 1400(b). Google denies that it has committed any acts that constitute infringement or otherwise give rise to this action. Google denies each and every remaining allegation of paragraph 4.

## GENERAL ALLEGATIONS

5.     Answering paragraph 5, Google admits that what appears to be a copy of U.S. Patent No. 6,324,538 (the "'538 patent") is attached as Exhibit A to the Complaint. Google admits that, on its face, Exhibit A states that its title is "Automated On-Line Information Service and Directory, Particularly for the World Wide Web," and that its issue date appears to be November 27, 2001. Google admits that Ralph E. Wesinger, Jr. ("Wesinger") and Christopher D. Coley ("Coley") are named as inventors on the face of Exhibit A. Google is without knowledge or information sufficient to form a belief as to the truth of the allegation that GraphOn is the legal assignee of the '538 patent, and on that basis denies the allegation. Google

denies that the '538 patent was duly and legally issued. Google denies each and every remaining allegation in paragraph 5.

6.      Answering paragraph 6, Google admits that what appears to be a copy of U.S. Patent No. 6,850,940 (the "'940 patent") is attached as Exhibit B to the Complaint. Google admits that, on its face, Exhibit B states that its title is "Automated On-Line Information Service and Directory, Particularly for the World Wide Web," and that its issue date appears to be February 1, 2005. Google admits that Wesinger and Coley are named as inventors on the face of Exhibit B. Google is without knowledge or information sufficient to form a belief as to the truth of the allegation that GraphOn is the legal assignee of the '940 patent, and on that basis denies the allegation. Google denies that the '940 patent was duly and legally issued. Google denies each and every remaining allegation in paragraph 6.

7.      Answering paragraph 7, Google admits that what appears to be a copy of U.S. Patent No. 7,028,034 (the "'034 patent") is attached as Exhibit C to the Complaint. Google admits that, on its face, Exhibit C states that its title is "Method and Apparatus for Providing a Dynamically-Updating Pay-for-Service Web Site," and that its issue date appears to be April 11, 2006. Google admits that Wesinger and Coley are named as inventors on the face of Exhibit C. Google is without knowledge or information sufficient to form a belief as to the truth of the allegation that GraphOn is the legal assignee of the '034 patent, and on that basis denies the allegation. Google denies that the '034 patent was duly and legally issued. Google denies each and every remaining allegation in paragraph 7.

8.      Answering paragraph 8, Google admits that what appears to be a copy of U.S. Patent No. 7,269,591 (the "'591 patent") is attached as Exhibit D to the Complaint. Google admits that, on its face, Exhibit D states that its title is "Method and Apparatus for Providing a

Pay-for-Service Web Site," and that its issue date appears to be September 11, 2007.  Google admits that Wesinger and Coley are named as inventors on the face of Exhibit D.  Google is without knowledge or information sufficient to form a belief as to the truth of the allegation that GraphOn is the legal assignee of the '591 patent, and on that basis denies the allegation. Google denies that the '591 patent was duly and legally issued.  Google denies each and every remaining allegation in paragraph 8.

## COUNT 1

9.      Answering paragraph 9, Google repeats and realleges its responses to paragraphs 1 through 8 above as if fully set forth herein.

10.     Answering paragraph 10, Google admits that it offers an online service at the website http://base.google.com.  Google denies the remaining allegations in paragraph 10.

11.     Answering paragraph 11, Google admits that it offers an online service at the website http://adwords.google.com.  Google denies the remaining allegations in paragraph 11.

12.     Answering paragraph 12, Google admits that it offers an online service at the website https://www.blogger.com.  Google denies the remaining allegations in paragraph 12.

13.     Answering paragraph 13, Google admits that it offers an online service at the website https://sites.google.com.  Google denies the remaining allegations in paragraph 13.

14.     Answering paragraph 14, Google admits that it offers an online service at the website http://www.youtube.com.  Google denies the remaining allegations in paragraph 14.

15.     Google denies each and every allegation set forth in paragraph 15, and specifically denies any wrongdoing or infringement.

16.     Google denies each and every allegation set forth in paragraph 16, and specifically denies any wrongdoing or infringement.

## RESPONSE TO PRAYER FOR RELIEF

Google denies that it infringes or has infringed, either directly or indirectly, any valid and enforceable claim of the '538, '940, '034 and/or '591 patents identified in the Complaint. Google also denies that GraphOn is entitled to any of the relief requested against Google, including injunctive relief, damages, attorneys' fees, costs, interest, or any other relief of any kind.

## II.     AFFIRMATIVE DEFENSES

Google alleges and asserts the following defenses in response to the allegations in the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the affirmative defenses described below, Google specifically reserves all rights to allege additional affirmative defenses that become known through the course of discovery.

## FIRST AFFIRMATIVE DEFENSE
### (Unenforceability)

17.     Wesinger, Coley, their patent counsel, and/or other individuals associated with the filing and prosecution of the applications for the '538, '940, '034 and '591 patents violated their duty of candor and good faith in dealing with the United States Patent and Trademark Office (the "PTO") by intentionally and deceptively failing to disclose to the PTO material information during the prosecution of the applications for the patents-in-suit.

18.     The '034 and '591 patents issued from patent applications that continued from the applications that issued as the '538 and '940 patents. The '538, '940, '034 and '591 patents each claims the benefit of the filing date of a parent application that issued as U.S. Patent No. 5,778,367 (the "'367 patent"). Each of the patents asserted against Google belongs to the same patent family, and each shares an identical specification and similar claims. The '538, '940, '034

and '591 patents are unenforceable, both directly and under the doctrine of infectious

unenforceability, as a result of the inequitable conduct described below.

A.      **Unenforceability for Intentional Failure to Disclose *eBay* Litigation and
        Material Prior Art Provided During Such Litigation**

19.     During the time the application for the '538 patent was pending, Network

Engineering, the employer of Wesinger and Coley, filed an action against eBay alleging

infringement of the '367 patent.  That litigation was captioned *Network Engineering Software,*

*Inc. v. eBay, Inc*., No. 99-1433-BZ (N.D. Cal.) (the "*eBay* litigation").  Network Engineering's

litigation counsel, McDonnell Boehnen Hulbert & Berghoff ("MBHB"), was also prosecuting

the application for '538 patent during the pendency of such litigation.  In fact, at least one of the

lawyers from MBHB, Robert J. Irvine, who filed an individual appearance in the *eBay* litigation,

was intimately involved in the prosecution of the '538 patent, the '367 parent application and a

related application also naming Wesinger and Coley as inventors, Serial No. 08/595,956 (the

"'956 application").   Mr. Irvine signed most of the office action responses and many of the other

filings with the PTO in the '538 patent application, the '367 patent application and the '956

application.  Mr. Irvine was thus personally familiar with both the *eBay* litigation and the

substance and status of the pending applications.

20.     Wesinger and Coley, MBHB, the applicants' subsequent patent counsel (Cardinal

Law Group and Sierra Patent Group), and/or other individuals associated with the filing and

prosecution of the applications for the '538, '940, '034 and '591 patents had a duty to disclose

the existence of the *eBay* litigation and the material information arising from the litigation to the

PTO.  MPEP § 2001.06(c) (Aug. 1993) ("Where the subject matter for which a patent is being

sought is, or has been involved in litigation, the existence of such litigation and any other

material information arising therefrom must be brought to the attention of the U.S. Patent and

Trademark Office. Examples of such material information include evidence of possible prior public use or sales, questions of inventorship, prior art, allegations of 'fraud,' 'inequitable conduct,' and 'violation of duty of disclosure.' Another example of such material information is any assertion that is made during litigation which is contradictory to assertions made to the examiner. . . . Such information might arise during litigation in, for example, pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony."); *see also Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1234 (Fed. Cir. 2007) ("[T]he existence of the litigation itself is material information that an examiner needs to have. It is important because it signals the examiner that other material information relevant to patentability may become available through the litigation proceedings.  The PTO obviously considers such information material and there is no basis for us to conclude otherwise.").

21.  Despite the intimate familiarity of MBHB and Mr. Irvine with the *eBay* litigation and the pending applications, MBHB and the applicants failed to disclose the existence of the *eBay* litigation, as well as material information submitted by eBay in the litigation, during the prosecution of the applications for the '538, '940, '034 and '591 patents.   Furthermore, neither Mr. Irvine nor anyone else at MBHB disclosed to the examiner of the application for the '538 patent the existence of at least two highly material prior art references that were (as discussed more fully below) the subject of two summary judgment motions filed by eBay alleging that the asserted claims of the parent '367 patent were anticipated by such references.  These references were not disclosed by Mr. Irvine or anyone else at MBHB even though Mr. Irvine signed a terminal disclaimer for the '538 patent after the examiner rejected the pending claims of the '538 patent for double patenting in light of the very claims of the '367 patent that were the subject of the summary judgment motions filed by eBay.  Furthermore, Mr. Irvine and MBHB either knew

or should have known that the pending claims of the application for the '538 patent were very similar in scope to the claims of the '367 patent that were the subject of eBay's anticipation motion, because they prosecuted both sets of claims.

22.     Rather than disclose these summary judgment motions and the material prior art references to the examiner in the pending application for the '538 patent in a timely fashion after receiving such references from eBay (as they had a duty to do), Mr. Irvine and MBHB made no mention to the patent office of any of this information.  Instead, the applicants' subsequent patent counsel (Cardinal Law Group) waited until after the notice of allowance was received for the pending claims almost two years later to submit these two material references to the examiner along with 236 other highly technical references.  Even then, neither the eBay litigation, nor the summary judgment motions were ever disclosed.  As discussed more fully below, the delay in submitting the references, the burying of the references in a submission with 236 other references, and the failure to ever disclose the *eBay* litigation or the summary judgment motions violated the duty of candor that the applicants, MBHB, Mr. Irvine and Cardinal Law Group owed to the PTO.

23.     Network Engineering Software, Inc. filed suit against eBay, Inc. ("eBay") on March 23, 1999, alleging that eBay infringed several claims of the '367 patent.  The '367 patent claims methods of using a computer network and a database accessible through a computer network similar to those claimed in the patents-in-suit.  In fact, the applicants filed terminal disclaimers in the applications for the '538 and '034 patents over the '367 patent and claims substantially similar to the issued claims in the '538 patent were rejected by the examiner for double patenting in light of the disclosure and claims of the '367 patent.  Therefore, prior art material to the claims of the '367 patent was material to the claims pending in the applications

for each of the patents-in-suit.  Given its role as litigation counsel in the *eBay* litigation and its role as prosecution counsel in the applications for the '367 and '538 patents, MBHB (and Robert J. Irvine) were intimately familiar with the materiality of the references relied upon by eBay in the summary judgment motions.  Network Engineering's subsequent patent counsel (the Cardinal Law Group) recognized the relevance of these two references relied upon by eBay in the motions, but they buried them along with 236 other references in an IDS submitted to the PTO after the notice of allowance in the application for the '538 patent.  Neither these references, nor their role in the *eBay* litigation was highlighted to the examiner when the voluminous IDS was dumped on the examiner.

24.     On June 1, 1999, eBay filed a motion for summary judgment of invalidity of several claims of the '367 patent in light of U.S. Patent No. 5,832,497 (the "'497 patent").  eBay asserted in the motion that claims 1, 16 and 17 of the parent '367 patent were anticipated by the '497 patent.  On October 27, 1999, eBay filed another motion for summary judgment of invalidity under 35 U.S.C. § 102 alleging that claims 1-13, 16-17 and 25 of the '367 patent were anticipated by U.S. Patent No. 5,870,552 (the "'522 patent").

25.     Neither of these motions by eBay was addressed substantively by the Court in the pending litigation, because the Court determined that it needed to construe the pending claims of the '367 patent before considering the invalidity motions.  The *eBay* litigation was ultimately dismissed by stipulation on January 19, 2000, while prosecution of the '538 patent application was ongoing, and before the applications for the '940, '034 and '591 patents were filed.  The invalidity issue was not resolved by the Court prior to dismissal of the action.  During prosecution the PTO applies a broadest reasonable construction standard to the pending claims.  Therefore, the Court's determination in the *eBay* litigation that claim construction was required

before the summary judgment motion on anticipation could be addressed is irrelevant to the question of the materiality of the '497 patent, the '522 patent and the summary judgment motions themselves.

26.     Furthermore, the applicants and their patent counsel apparently did not rely on the Court's refusal to consider the summary judgment motions during the *eBay* litigation in connection with their decision not to submit the art submitted by eBay to the examiner in a timely fashion, because they later submitted these references, albeit in a buried fashion, almost two years after receiving the motions for summary judgment from eBay.  Telling of the applicants' intent to bury these highly material references was the timing and manner in which they were belatedly submitted to the examiner.  Both references were submitted in connection with an information disclosure statement filed by the applicants after the notice of allowance in the application (but before issuance) along with 236 other references (128 other patents and 108 printed publications) on the same IDS.  Burying such material references is inconsistent with the applicant's duty of candor and, upon information and belief, was calculated to limit the examiner's ability to seriously consider such references, as evidenced by the fact that the examiner indicated on the  PTO-1449 form that he reviewed each of these 238 technical references on the same day – July 17, 2001.

27.     The applicants and their patent counsel also failed to raise the '497 and '522 patents in the prosecution of any of the subsequent continuation applications resulting in the other patents-in-suit.  Furthermore, neither the applicants nor their patent counsel ever disclosed to the examiners of the patents-in-suit the existence of the *eBay* litigation or the motions for summary judgment filed by eBay.

28.     A reasonable examiner would have found both the '497 and '522 patents to be

material to the pending claims of the application leading to the '538 patent, as well as the claims in the remaining patents-in-suit. The '497 and '522 patents anticipate and/or render obvious numerous claims of the patents-in-suit. In fact, the '497 patent discloses an online job-posting and resume posting system that is substantially similar to a system that GraphOn claims to infringe the patents-in-suit in another action currently pending in this District (Civil Action No. 08-CV-97 (TJW)).

29. The existence of the *eBay* litigation, the fully briefed summary judgment motions filed by eBay concerning invalidity of the claims of the '367 patent of nearly identical scope to claims in the pending application and the prior art relied upon by *eBay* in such motions was material to the patentability of the '538, '940, '034 and '591 patents. The failure to disclose the litigation and the material information arising therefrom, coupled with the concerted effort to bury the highly material references, amounts to a breach of the duty of candor and good faith and, upon information and belief was done with deceptive intent. The '538, '940, '034 and '591 patents are all therefore unenforceable as a result of this inequitable conduct.

**B.** **Unenforceability for Intentional Failure to Disclose Material Information Regarding a Related Application**

30. The failure to disclose the material information concerning the *eBay* litigation was not the only deceptive conduct by MBHB and the applicants for the patents in suit during the prosecution of such patents. Wesinger and Coley, MBHB, the applicants' subsequent patent counsel and/or other individuals associated with the filing and prosecution of the applications for the '538, '940, '034 and '591 patents intentionally and deceptively failed to disclose to the PTO during prosecution of each of the patent applications the existence of a related application, Serial No. 08/595,956 (the "'956 application"), as well as the PTO's office actions and the prior art relied upon by the patent examiner in the prosecution of the '956 application.

31.     On February 6, 1996, Wesinger and Coley filed the '956 application, which related to a secure database that can be attached to and receive information over a public network and, in particular, to a credit card server system for securely storing credit card information received over the Internet in the context of a commercial transaction.  MBHB and Mr. Irvine were counsel of record for Network Engineering during the prosecution of such application.  Mr. Irvine, once again, signed several of the office action responses filed in the '956 application.

32.     In February 1997, the PTO rejected the '956 application under 35 U.S.C. § 103 as obvious over certain prior art.  Other rejections followed.  The claims rejected by the PTO during the prosecution of the '956 application included claims directed to systems and methods for on-line storage and processing of user credit card information.

33.     In July 1998, while the '956 application was pending, Wesinger and Coley filed an application for the '538 patent, which was prosecuted for over two years by MBHB and Mr. Irvine.  The '538 patent application was assigned to a different examiner than the examiner of the '956 application.  Initially, the claims in the '538 patent application did not seek coverage of a method including elements for charging users for on-line services by credit card.

34.     In April 1999, the PTO issued a Notice of Allowance for the '538 patent. The applicants subsequently abandoned the allowed application, requested acceptance of a continued prosecution application, and immediately filed a preliminary amendment to the application that added two dependent claims directed to charging a user for a database entry and, more specifically, charging the user by credit card.

35.     After submitting this amendment to the '538 patent application, on January 6, 2000, the applicants abandoned the '956 application altogether.  Although two of the references cited during the prosecution of the '956 application were eventually put before the examiner in

connection with the '538 patent application – one by the applicants and one by the examiner – the majority of the references cited during the '956 application, including the two references primarily relied upon by the examiner to reject the pending claims, were never brought to the attention of the examiner of the '538 patent application. These references were necessarily material to at least the claims added by the applicants to the '538 application concerning methods for charging a user's credit card, because they were relied upon by the examiner of the '956 application to reject claims containing elements of a similar scope.

36.    Despite the materiality of the '956 application, the office actions and responses in connection with that application, and the art cited during the prosecution of the '956 application, neither Wesinger nor Coley, nor their patent counsel, nor any other person that was associated with the filing and prosecution of the application for the '538 patent, disclosed during the prosecution of the '538 patent application the existence of the '956 application, the examiner's rejection of claims in the '956 application directed to charging a user's credit card for on-line services, or the art relied upon in that rejection.

37.    The existence of the '956 application and its prosecution was material to the patentability of the '538 patent, particularly the claims amended shortly before abandoning the '956 application that added elements seeking similar subject matter as claims previously rejected in the '956 application. The failure to disclose the '956 application and its prosecution to the PTO amounts to a breach of the duty of candor and good faith and, upon information and belief, was done with deceptive intent. The '538 patent is therefore unenforceable as a result of this inequitable conduct.

38.    Likewise, neither Wesinger nor Coley, nor their patent counsel, nor any other person that was associated with the filing and prosecution of the application for the '940 patent

disclosed the unsuccessful '956 application and the PTO's office actions and the prior art relied upon by the patent examiner in the prosecution of that application to the PTO during the prosecution of the '940 patent application. The '940 patent issued from a continuation of the application resulting in the '538 patent and is thus unenforceable as a result of the deceptive conduct described in paragraphs 30-37 above.

39.     The applications for the '034 and '591 patents were continuations of a continuation of the '940 patent, and were filed on May 11, 2004, well after the '956 application was abandoned.

40.     The '034 and '591 patents are directed to a web server for providing a "pay-for-service web site" that includes a process for receiving "a fee for making the personal homepage accessible on a network." '034 patent, Abstract; '591 patent, Abstract.

41.     Neither Wesinger nor Coley, nor their patent counsel, nor any other person that was associated with the filing and prosecution of the applications for the '034 and '591 patents, however, disclosed the unsuccessful '956 application and the PTO's office actions and the prior art relied upon by the patent examiner in the prosecution of that application to the PTO during the prosecution of the applications for the '034 and '591 patents.

42.     The existence of the '956 application and its prosecution was material to the patentability of the '034 and '591 patents, because, among other reasons, the '956 application sought claims for subject matter that was similar in scope to that sought by claims in the '034 and '591 patent applications. Furthermore, prior art relied upon by the examiner of the '956 application to reject claims directed toward a method for charging a user's credit card for on-line services was never brought to the attention of the examiner of the '034 and '951 patent applications. The failure to disclose the application, the cited art and the prosecution history of

the '956 application to the PTO amounts to a breach of the duty of candor and good faith and, upon information and belief, was done with deceptive intent. The '034 and '591 patents therefore are unenforceable as a result of the inequitable conduct.  Furthermore, the '034 and '591 are unenforceable as a result of the inequitable conduct in the prosecution of the '538 and '940 patents under the doctrine of infectious unenforceability.

**C.  Unenforceability for Intentional Failure to Disclose *AutoTrader* Litigation**

43.  Consistent with the approach to the information concerning the *eBay* litigation and abandoned '956 application, the individuals associated with the filing and prosecution of the applications for the '034 and '591 patents also intentionally and deceptively failed to disclose to the PTO during prosecution of each of these two patent applications the existence of other material litigation: *GraphOn Corp. v. AutoTrader.com, Inc.*, No. 05-cv-530-TJW (E.D. Tex.) and *GraphOn Corp. v. AutoTrader.com, Inc.*, No. 07-cv- 367-TJW (E.D. Tex.) (incorporating the pleadings from No. 05-cv-530) (collectively, the "*AutoTrader.com* litigation"), as well as material information arising therefrom.

44.  Wesinger, Coley,  their patent counsel (Sierra Patent Group) and any other person that was associated with the filing and prosecution of the applications or the '034 and '591 patents had a duty to disclose the existence the *AutoTrader.com* litigation, and the material information arising therefrom, to the PTO.

45.  The applications for the '034 and '591 patents were filed on May 11, 2004.  On November 22, 2005, while these applications were pending before the PTO, GraphOn filed a lawsuit in this Court against AutoTrader.com for the alleged infringement of the '538 and '940 patents.

46.  On January 17, 2006, AutoTrader.com filed an answer and counterclaim. AutoTrader.com served a motion for summary judgment of invalidity of the '538 and '940

patents on March 24, 2006.

47.     The '034 patent issued on April 11, 2006, from an application that continued from the applications for the '538 and '940 patents. The '538, '940 and '034 patents share an identical specification and similar claims.  Nevertheless, at no point during the prosecution of the '034 patent application did the applicants or any other person that was associated with the filing and prosecution of this application disclose the existence of the *AutoTrader.com* litigation to the PTO, or AutoTrader.com's motion for summary judgment of invalidity.

48.     On September 27, 2006, AutoTrader.com served its first invalidity contentions, which outlined the invalidity of the '538 and '940 patents. This Court issued its claim constructions on June 28, 2007.  On August 13, 2007, AutoTrader.com filed a motion for leave to file an amended answer and counterclaim of inequitable conduct.  On  September 5, 2007, AutoTrader.com served expert reports on invalidity and unenforceability of the '538 and '940 patents.

49.     The '591 patent issued on September 11, 2007, from an application that continued from the applications for the '538 and '940 patents. The '538, '940 and '591 patents share an identical specification and similar claims.

50.     Nevertheless, at no point during the prosecution of the '591 patent application did the applicants or any other person that was associated with the filing and prosecution of this application disclose to the PTO the existence of the *AutoTrader.com* litigation to the PTO, AutoTrader.com's motion for summary judgment of invalidity,  Autotrader.com's invalidity contentions and several of the prior art references cited therein, the inequitable conduct allegations, the expert report on invalidity, or this Court's claim constructions.

51.     The existence of the *AutoTrader.com* litigation and material information arising

therefrom, including the prior art referenced in that litigation, was material to the patentability of the '034 and '591 patents, because these patents were continuations of the applications that resulted in the patents-in-suit in the *Autotrader.com* litigation and the '034, like the '538, was the subject of a terminal disclaimer filed by the applicants in light of the claims of the parent '367 patent. The failure to disclose this material information to the PTO amounts to a breach of the duty of candor and good faith and was done with deceptive intent. The '034 and '591 patents therefore are unenforceable as a result of this inequitable conduct.

## SECOND AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

52. GraphOn's Complaint fails to state a claim on which relief may be granted.

## THIRD AFFIRMATIVE DEFENSE
### (Non-Infringement)

53. Google is not infringing, and has not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '538, '940, '034 or '591 patents.

## FOURTH AFFIRMATIVE DEFENSE
### (Invalidity)

54. The claims of the '538, '940, '034 and '591 patents are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103 and/or 112.

## FIFTH AFFIRMATIVE DEFENSE
### (Waiver, Laches, Estoppel)

55. GraphOn's claims for relief, in whole or in part, are barred by the doctrines of waiver, laches, and/or estoppel.

## SIXTH AFFIRMATIVE DEFENSE
### (Unavailability of Injunctive Relief)

56.     GraphOn cannot satisfy the requirements applicable to its request for injunctive relief and has an adequate remedy at law.

## SEVENTH AFFIRMATIVE DEFENSE
### (Limitations on Damages)

57.     GraphOn's alleged damages are limited because it has not satisfied the requirements for obtaining damages under 35 U.S.C. § 287, and the limitations period further bars past damages claims.

## EIGHTH AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel and Prosecution Laches)

58.     GraphOn's infringement claims are barred by the doctrines of prosecution history estoppel and prosecution laches.

## NINTH AFFIRMATIVE DEFENSE
### (Standing)

59.     GraphOn lacks standing to assert the claims for infringement made by GraphOn in this case because there is not a proper chain of assignment of the patents-in-suit to GraphOn.

WHEREFORE, Google denies that it infringes or has infringed, either directly or indirectly, any valid and enforceable claim of the '538, '940, '034 and '591 patents identified in the Complaint, and further denies that GraphOn is entitled to any judgment against Google whatsoever. Google asks that GraphOn's Complaint be dismissed with prejudice, that judgment be entered for Google, and that Google be awarded attorneys' fees incurred in defending against GraphOn's Complaint, together with such other relief the Court deems appropriate.

### III. COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant and Counterclaim-Plaintiff Google alleges the following Counterclaims against Plaintiff and Counterclaim-Defendant GraphOn:

60.     This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the United States Patent Act, 35 U.S.C. § 1, *et seq.* Google requests a judicial declaration that (1) it does not infringe any valid, enforceable claim of the '538, '940, '034 and '591 patents; (2) the '538, '940, '034 and '591 patents are invalid; and (3) the '538, '940, '034 and '591 patents are unenforceable.

### THE PARTIES

61.     Google is a corporation organized and existing under the laws of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

62.     GraphOn has alleged that it is a corporation organized and existing under the laws of Delaware, with its principal place of business at 5400 Soquel Avenue, Suite A2, Santa Cruz, CA 95062.

### JURISDICTION AND VENUE

63.     Subject to Google's affirmative defenses and denials, this Court has jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202.

64.     To the extent it is determined that Venue is proper for the action filed by GraphOn against Google, to which this counterclaim is made, Venue is proper in this district because GraphOn has consented to the propriety of venue by filing such in this Court.

65.     GraphOn has submitted to the personal jurisdiction of this Court by bringing the

present action.

**COUNTERCLAIM ONE**
**Declaratory Judgment of Non-Infringement of the '538, '940, '034 and '591 Patents**

66.     Google repeats and re-alleges the allegations of the preceding paragraphs 60-65 of these Counterclaims as if fully set forth herein.

67.     GraphOn alleges it is the sole holder of the entire right, title and interest in the '538, '940, '034 and '591 patents.

68.     GraphOn has sued Google in the present action, alleging infringement of the '538, '940, '034 and '591 patents. Thus, an immediate, real and justiciable controversy exists between GraphOn and Google with respect to the alleged infringement of the '538, '940, '034 and '591 patents.

69.     Google is not infringing, and has not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '538, '940, '034 and '591 patents.

70.     Google is entitled to a declaratory judgment that it has not and does not infringe, directly or indirectly, any valid, enforceable claim of the '538 , '940, '034 and '591 patents.

71.     GraphOn has also filed this action without a good faith basis, making this an exceptional case. Consequently, GraphOn is liable for any and all attorneys' fees, expenses and costs incurred by Google in connection with this baseless action by GraphOn.

**COUNTERCLAIM TWO**
**Declaratory Judgment of Invalidity of the '538, '940, '034 and '591 Patents**

72.     Google repeats and re-alleges the allegations of the preceding paragraphs 60-65 of these Counterclaims as if fully set forth herein.

73.     GraphOn has sued Google in the present action, alleging infringement of the '538,

'940, '034 and '591 patents. Thus, an immediate, real and justiciable controversy exists between GraphOn and Google with respect to the validity of the '538, '940, '034 and '591 patents.

74.     The claims of the '538, '940, '034 and '591 patents are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103 and/or 112.

75.     Google is entitled to a declaratory judgment that the claims of the '538, '940, '034 and '591 patents are invalid.

76.     GraphOn has also filed this action without a good faith basis, making this an exceptional case. Consequently, GraphOn is liable for any and all attorneys' fees, expenses and costs incurred by Google in connection with this baseless action by GraphOn.

**COUNTERCLAIM THREE**
**Declaratory Judgment of Unenforceability of the '538, '940, '034 and '591 Patents**

77.     Google repeats and re-alleges the allegations of the preceding paragraphs 60-65 of these Counterclaims as if fully set forth herein.

78.     An actual controversy exists between GraphOn and Google with respect to the enforceability of the '538, '940, '034 and '591 patents.

79.     The applicants, MBHB, the applicants' subsequent patent counsel, and/or other individuals associated with the filing and prosecution of the applications for the '538, '940, '034 and '591 patents violated their duty of candor and good faith in dealing with the PTO by intentionally and deceptively failing to disclose to the PTO material information during the prosecution of the applications for these patents.  These actions and failure to disclose material information are detailed in Paragraphs 17 through 51 of Google's First Affirmative Defense to GraphOn's Complaint set forth above.  Google repeats and realleges Paragraphs 17 through 51 of Google's First Affirmative Defense to GraphOn's Complaint set forth above, as if fully set

forth herein.

80.     As a result of this inequitable conduct, the '538, '940, '034 and '591 patents are unenforceable.  Google seeks a declaration that the '538, '940, '034 and '591 patents are unenforceable.

## **RELIEF**

WHEREFORE, Google respectfully requests the following relief:

That GraphOn take nothing by its Complaint and that GraphOn's Complaint be dismissed with prejudice;

That the Court find and declare that Google does not infringe any valid, enforceable claim of the '538, '940, '034 and/or '591 patents;

That the Court find and declare that the claims of the '538, '940, '034 and '591 patents asserted against Google are invalid and unenforceable;

That, pursuant to 35 U.S.C. § 285, Fed. R. Civ. P. 11, and/or other applicable laws, the Court find that GraphOn's conduct in commencing and pursuing this action renders this an exceptional case and that Google be awarded its attorneys' fees, expenses and costs incurred in connection with this action; and

That Google be granted such other and additional relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Under Rule 38 of the Federal Rules of Civil Procedure, Google hereby demands a trial by jury.

Dated: October 8, 2008                              Respectfully submitted,


*/s/ Diane V. DeVasto*
Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Diane V. DeVasto
State Bar No. 05784100
dianedevasto@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, Texas  75710
(903) 597-8311
(903) 593-0846 (Facsimile)

David A. Nelson
david.nelson@lw.com
Latham & Watkins LLP
Sears Tower, Suite 5800
233 S. Wacker Drive
Chicago, IL 60606
Tel: (312) 876-7700
Fax: (312) 993-9767

Sean S. Pak
sean.pak@lw.com
Latham & Watkins LLP
505 Montgomery St., Suite 2000
San Francisco, CA. 94111-6538
Tel: (415) 391-0600
Fax: (415) 395-8095

**ATTORNEYS FOR DEFENDANT
GOOGLE, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 8th day of October 2008. Any other counsel of record will be served by first class U.S. mail on this same date.

_/s/ Diane V. DeVasto_
Diane V. DeVasto